Thank you. May it please the Court, Peggy Ruffray from the Attorney General's Office for the appellant in this case. Your Honor, at stake in this case is the California legislature's ability to enact a retroactive law that applies to plea bargains. Also at stake is whether a person gets the benefit of his bargain when they enter into a plea agreement. And don't we have a finding of fact by the district court that it was contemplated that that plea would render the whole matter confidential? No. There was no factual finding in this case. The record is undisputed as to what happened. The magistrate judge simply looked at that undisputed evidence and then made what can only be considered a legal determination. And what was that legal determination? Was that the intent of the parties was? The legal determination was that the words PC 290 registration in the written plea agreement constituted an implied promise that the defendant would only be subject to that law forevermore, even if the legislature expressly enacted a retroactive law. So the intent of the parties was to encompass that, the state of the law at that time in the plea agreement. That's what the magistrate judge found. And that's not a finding of fact with respect to the intent and contemplation of the parties? Well, the magistrate judge could only reach that conclusion by disregarding entirely the law that governs that issue. Now the question of fact, not a question of law. So look at that that way. Well, if it's a question of fact, then it is clearly erroneous, because it completely disregarded the applicable law in the area, as this Court has found and as 21 district courts have found. That How can a question of fact become a question of law? I don't think it is a question of fact. I think it's a question of fact. But I suggest to you that it is a question of fact. Would you deal with it on that basis? And if it is a question of fact, then I believe it's clearly erroneous. Why? Why is it a question of fact? Then you gave me one answer. Well, because it's a question of law. But, okay, there's a factual finding that in the light of all the circumstances, this is what the intent was. Because the Court isn't writing on a clean slate. Well, but what facts were wrong? What fact was wrong? That's your burden. The fact that was wrong was that those words, PC290 registration, it's right here in the written agreement, and this is the only evidence. In fact, the parties agree that there was no discussion about the registration requirement other than the fact that it was, in fact, mandatory. And confidential. I'm sorry? They understood it was confidential. It would only be shared with law enforcement at the time. Is that right? Well, that was simply a description of the existing law. That wasn't some sort of How can you brush it aside as simply a description of existing law? Well, that's what the Court did in Davis, and that's what every other court to look at this issue has done. They have said when the plea bargain is made and the parties say, here is the existing law, here's the statute, they put just those words into the plea agreement and nothing else, then that is merely a description of existing law, which the California legislature is entitled to amend retroactively. So Davis carries the day as far as you're concerned. Correct. I think Davis is the controlling law and cannot be distinguished. Now, the magistrate judge tried to distinguish that case solely on the fact that it arose in a three-strikes context. But clearly, the principle of law announced in Davis applies to any plea bargain. There's absolutely no principle basis to say you can just dismiss that because it arose in a three-strikes context. The principle was that contracts, including plea bargains, are deemed to incorporate and contemplate not only the existing law, but the reserve power of the State to amend the law or enact additional laws, and that's exactly what happened here. The parties, the only thing that was in the record was these words in the written plea agreement and no discussion. There was no agreement about changes in the law. Well, that isn't quite accurate, Ms. Rubio. I believe it is. The magistrate made a number of findings on the circumstances. But the magistrate did not. Can I finish? California law says you look at the circumstances, and this judge looked at the circumstances. Now, you somehow will not answer my question about the facts. You just say it's the law, it's the law. But this judge carefully went through the whole context, made factual findings of what that context was. And you can't come in here and just say, well, look at the law. We all looked at the law, but she looked at the facts or he looked at the facts. Well, the only possible factual finding was that this PC-290 was somehow included an implied promise that the law would never change. That's the only conceivable factual finding. No, no, no. You're quite mistaken. No, that's what the magistrate said. Excuse me. You're quite mistaken, because the law is clear that if there is a promise, the promise trumps the law. We're not in a State where we say the legislature is always right. No. The prosecutor can make promises that do trump the law. So that is the issue here. Did the promise, was there a promise implicit here? So, yes. The initial question is, was there some agreement? Did the prosecutor give something up, bargain away something that had to do with changes in the law? And he clearly did not, because they didn't even discuss it. Well, now, you've taken that avenue. But look at the facts that were found, that this was extremely important to the defendant. And the defendant would not have entered the agreement if it didn't exist, if that promise hadn't been made. And then there is a principle of law that's involved. I hope you're listening to me. There is a principle involved that a contract is interpreted against the drafter. So here you have one party believing that he's secured confidentiality, and certainly in the face of it, that's true. And it's interpreted against the prosecutor. Well, I think you focused on the second aspect of the magistrate judge's holding. The first was whether there was an agreement at all, which we believe there was not. On the agreement issue, I must say that maybe you do have a point here, because as I look at Judge Larson's order, he starts on page 16 of the record until about page 22, in which he is looking at what Mr. Ruby testified to as to what Mr. Doe's intentions were and what his views were. So it's a testimony by the attorney about what his client felt and wanted. But I don't see any connection between that and an agreement entered into by the State. And I guess that's what you're saying. Correct. There have to be two parties to a contract, the State and the defense. And in this case, the prosecutor never even had a discussion about the registration law with defense. So when Judge Larson, magistrate Judge Larson, looks at all of this testimony about what Mr. Doe wanted in terms of his conversation with his lawyer, that that doesn't bind the State in any way. Correct. And that could be the basis for the clear error. Correct. The prosecution wasn't a part of any of that, which is undisputed on the record. But in contract terms, you're saying there was no meeting of the minds on that precise issue. Absolutely. That is correct. That is correct. But then if there was a mistake, who was the contract interpreted against? Well, I don't believe there was a mistake. This was an absolutely. Well, wait a minute. If you accept Mr. Ruby's testimony, Mr. Doe is entering in it on one basis and the other basis is that the defendant relied on the existing statute. So who's going to – whose meaning is going to prevail? Well, the second point that you just referenced, Your Honor, the second point of the magistrate judge's holding was that the defendant relied on the existing statute. Well, that may well have been his subjective hope and his subjective reliance, but he didn't rely on something that the prosecution gave up. He was simply relying on the existing law. Well, all defendants rely on the existing law. But reliance alone cannot create a plea bargain. That doesn't create an enforceable term of a contract. If it did, then contract law would be thrown into chaos because every individual party would come in and say, well, here's what I personally was relying on, but even though the other side didn't know that that was in my head, didn't know that that's what I was thinking about, then that can't create an enforceable term of the plea bargain. How did the 290 reference get into the agreement? It was handwritten? It was interlineated? It's handwritten in the plea form in the usual way. There's a place, this is on ER-273, it's paragraph 10 of the written plea agreement, where the attorneys write in the maximum penalty. And so that was written, the sole words are 290 P.C. registration. Now, who wrote that? The prosecutor wrote that because the defense forgot to include it. So when the prosecutor looked over the plea agreement, he said, you forgot to add in all the mandatory terms. So he wrote that in and then the defense initialed it. The district court concluded from looking into the defendant's mind based on the testimony that the confidentiality part was critical to the defendant, is that right? Correct. Did the defense attorney say, and I told that to the prosecutor during these negotiations, that the confidentiality part was critical? No. In fact, he said, I didn't talk about that with the prosecutor. The evidence clearly is undisputed here that there was no discussion at all, not about why the defendant wanted to plead guilty, not about the registration requirement and whether he thought that was important or not. It simply was at the time when they came up in court, they filled this out. The prosecutor said, oh, you forgot the mandatory registration requirement and the fines and fees, some of the other ones in there. The defense attorney agreed that that should be in there. They put it in. They initialed it. That was the end of it. So this is just like any typical plea bargain that happens every day in the California courts, where you're simply incorporating the existing law. You're simply referencing, here's the current law. And there's no discussion about whether that may change, whether you're exempt from that in the future. There's certainly no promise that you will not be subject to changes in the future. And that's what California law requires. California says there is no implied incorporation of the law as it exists at the time. And it's California contract law that governs in these plea bargain cases. So if you look at Davis, Davis expressly recognized that principle of California law and said, unless there is an agreement to the contrary, these contracts do incorporate the legislature's ability to enact a retroactive law. And we believe that's what happened here. At the time of this plea, what was the status so far as the proposed change in the law? Was that pending or is that down the road? No. It had not been contemplated. I'd like to reserve my final two minutes. Thank you, counsel. We'll hear from Mr. Reardon. Your Honor, the State just made a critical comment. Counsel, if you don't mind, for the record, just in case. I apologize, Your Honor. We recognize you from the other day, but the tape recorder doesn't. Thank you, Your Honor. Dennis Reardon and Michael Romano for Appley Doe. The State just made a critical concession. They agreed that existing law was incorporated into this agreement. They just said that. And that's absolutely true. This was a situation where Mr. Doe probably would have preferred not to be subject to these requirements, right, have a plea bargain that didn't include them at all. It was the prosecutor, as the State has conceded, who says you are going to be subject to 290. Well, isn't Davis inconsistent with the argument that you're now making? No. Davis is our case. We love Davis. Okay. Yes. Because Davis is a case in which the – because the difference here is between when there's an agreement and when there's not. Okay. Every case cited by the State deal with situations where there's no agreement. Every one of them is the following. Somebody enters into a plea bargain and they get a warning. Okay, here's your plea. You get a year in the county jail, so forth. I'm warning you that if you do something in the future, you get 5 years for this prior. There's no agreement that they'll get 5 years for the prior. It's a warning. There's no consideration. What then happens is the legislature changes the law and gives 10 years or 25 years for the prior. They're on notice of that and they commit a future crime. They get 25 years. It doesn't change the original punishment they got. We're dealing with a situation where there's an agreement. It has nothing to do with future conduct. There's no offense of future conduct here. There's an agreement as to how this past offense will be treated. And they agree. They incorporate it in existing law and confidentiality. That's the agreement. It happens in commercial context all the time. Imagine this. A New York corporation hires somebody to work for them in California. There's – non-compete agreements aren't good in California. The New York corporation always insists it's going to be governed by New York law. The attorney for the other party says, look, they're going to get us. We're going to have to agree to New York law. But there's some good procedural protections in here. New York law disfavors arbitration agreements. They agree that New York law controls. For one party, it may be for the non-compete agreement. For the other party, it may be because they like the arbitration clauses. Here, the State exists. You've got to be subject to 290. The defendant agrees, but he's told and they agree to the confidentiality provisions. Davis, we win, because Davis is a case in which the defendant – it's the only case where this is true – where there's actually a contract about some future consequences. The defendant comes in and he agrees to plead to eight robberies. And there's an agreement that those eight robberies will be treated as one offense, which was existing law at the time. The law changes. Now, under California law, those eight offenses are treated as eight separate crimes. He commits a new offense. They say eight separate crimes. This Court says, oh, no. The agreement was that this would be handled as one crime. That overrides changes in California law. They're right about one thing. We agree on this. Everybody sits down and says, 290 applies. Confidentiality applies. Nobody talks about what would happen if the law changes. No promise as to that. Page 28 of our brief. Swenson. The parties to a contract are presumed to have had existing law in mind when they executed their agreement to hold that subsequent changes in the law, which impose greater burdens or responsibilities upon the parties, become part of that agreement, would result in modifying it without their consent and would promote uncertainty in commercial transactions. Torrance. Laws enacted subsequent to an execution of an agreement are not ordinarily deemed to become part of the agreement unless its language clearly indicates this to have been the attention of the parties. The State never suggested that if law changes, you'd lose the bargain for confidentiality. The cases they cite, and Davis, the language they cite, are situations, Your Honor, where there's no deal. Somebody commits a crime. In the future, they change the three strikes law. And somebody comes in and says, well, at the time I committed my last offense, I was only going to get five years. And the courts say, wait a minute. Wait a minute. At the time you committed your new offense, the law said you were going to get 25 years. You're not promised that the law won't change before you commit your new offense, but those are cases about whether there's a deal for future, the consequences of future conduct. Every one of these cases. Ask the State this. Point us to a case in which a California court or any court has said that you can change the consequences of past conduct based on a new law. It doesn't exist. What they have is cases where you can change the consequences of future conduct if, of course, you change them before the person commits a new offense. They don't have a single case inconsistent with the principles that we've cited on page 28 of the brief, Swenson and Torrance, that says that if you want a contract that says the contract will change in future cases, you've got to write it in there. Let's go to the commercial context again. Let's talk about oil futures. Somebody comes along and says, hey, we'll sell you oil at 50 bucks a barrel for the next two years, but if you sign up for five years, we'll sell it to you for $60 a barrel. And you might want to take that deal because the price of oil might go up to 75 in the future. Well, no, they take the two-year deal. They've been given a warning. Well, lo and behold, at the end of two years, the price of oil is $150 a barrel. And they say, oh, yeah, remember you said you'd sell it to us at 75. No, we never had a contract about what would happen in the future. That's the cases they're talking about. Now, what we're talking about is the situation where two people agree to confidentiality and the two people here are the client and his attorney. I can't find anything in the record which shows that the agreement was between the client and the government. But, Judge Scanlon, you would agree on this. There was an agreement to apply 290. Right. Right? 290 has different provisions. But it's naked. I mean, it says what it says. That's right. And it says that under existing law it's confidential. If you agree to apply 290, you get hit with the registration requirements. That's a bad thing for the defendant. You get hit with the confidentiality promise. That's a good thing. We agree. Judge, I agree with you that they did not discuss what would happen if the law changed. But California law says the prosecutor, if he wants to incorporate future law into past consequences, he has to say that right there, he has to have clear language. In other words, he's got to say you've got confidentiality requirements, but I'm telling you that that promise of confidentiality may disappear in the future and you'll then be subject to new law. That's what California law says he has to do. He didn't do that. He just said 290. He insisted on 290. And when he insisted on 290, he got the benefits of 290 and the defendant got the benefits of confidentiality. The important part of Judge Larson's opinion, Your Honor, where he talks about the defendant's reliance, is that it's a second element of the necessary showing we had to make. We not only had to show there was a bargain, we had to show that this particular portion of the bargain was important to the defendant. Because even if there had been a bargain, this is a situation, let's say you have confidentiality provisions and we had come in and the record had been, wait a minute, this guy was going to go to state prison. He didn't agree to this deal because of confidentiality. That wasn't important to him. The whole deal was about avoiding prison. We had to prove that his – this provision was really important to him. But, Your Honor, there is no dispute. They agreed. They agreed two minutes ago, or 10, that the parties agreed that existing law was incorporated into this – into this bargain. But don't you have Smith v. Doe, the Supreme Court of the United States, which permits a change which is retroactive so long as it does not increase the penalty? Sure. Isn't that exactly what we have here? Absolutely, Your Honor. Absolutely. No question about it. This is not an ex post facto problem, and we're not making an ex post facto argument. We agree that if there had not been a – a – a incorporation of 290 into the statute and reliance on it, we'd be out of luck. But they didn't. But what about the California cases that provide that retroactive changes are permissible? Your Honor, I – I submit this to, let's look at them. Every single one of those cases, every one, every one is a case in which somebody comes in and – and – and they made a plea bargain for a year in the county jail. They got it. They got the benefit of the bargain. They commit an offense, you know, 5 years later, and they're saying, gee whiz, when I picked up my last felony, I was only going to get a 5-year enhancement for this. I should only get a 5-year enhancement. Every one of those cases says, oh, no. No, no, no. If you choose to commit a future offense and the law has – has increased the penalty in between the time of your first offense and second, you're going to be bound by new law. Your Honor, not one of those cases, not one of those cases alters the consequences for past conduct. That's what we're talking about here. Mr. Doe has – has led a – a flawless life for the last 18 or 19 years. He hasn't done anything to increase – to get a new penalty. What he had was an agreement for the consequences of his past conduct. And that agreement was in place, and that agreement is all that he's saying. Hey, you hammered me. I've got to register. I've been doing it. I've got to give you my address. I've got to give you my information. But you promised me confidentiality, and I haven't done anything to breach that agreement. Again, Your Honor, I – I suggest we ask the State, when they get up here, okay, we've got these cases about how the law can change in three strikes cases. Point me to a case where California has said you can alter the consequences of past conduct as a result, not because of something new, but you can just up the penalty for past conduct based on a change in the law. But this is not a penalty. Isn't that the problem here? Isn't that what Smith v. Doe says? I shouldn't have used the word penalty because that gets us in Hacks post facto. Let's forget it. Right. The words used by California – In other words, if something happened which would have increased the sentence somehow, that would be a violation of due process. No, that would be a violation of the Hacks post facto clause and perhaps due process as well. Right. Okay. But, Your Honor, what California's law says is that you cannot impose greater burdens or responsibilities based on future changes in the law. That's on page 28. We would all agree that this is a greater burden and responsibility. When your son has the same name and any time anybody Googles him, the father's record comes up, and any time they Google the father, it's a greater burden or responsibility. So we're not making a penalty ex post facto argument. But what we are saying is that if – look, can you in a contractual situation, Your Honor, say, okay, the – you know, again, 50 bucks a barrel for 5 years. You come back and you say, you know what, the government has imposed a new tax on us and we want to pass it on and make your price $70 a barrel. There's been a change in the law. Did you cite City of Torrance and Swenson to the district court? Absolutely, Your Honor. And what was the district court's response to City of Torrance and Swenson? Well, the district court's response was simply that this is a situation in which there was a binding contract, and therefore, the government did not write in an additional provision that the terms of the contract could be altered by future law. This is a contract case. And I would suggest that the State's position would be preposterous if we were talking about dollars for barrels of oil. They're talking about changing the terms of the contract midstream based on a change in the law that did not exist at the time. Had the government – this circuit's law is clear that if the – if a prosecutor wants to make – and there's opinions that say, look, in the Federal context, if you want to make changes in the law part of a plea agreement, the consequences of a plea agreement, you, the prosecutor, have to write them in because you have the greater bargaining power. What about Acuna, People v. Acuna? I'm looking for the reference to it, Your Honor. But let me say this, Your Honor. I guess my response to whatever People v. Acuna says is People v. Arada, because in People v. Arada, a California court said – and this is a perfect example. A guy pleads guilty at the time he has a right to apply for expungement. It's got nothing to do with ex post facto, but he has a right to apply for expungement. A future law extinguishes the right to apply for expungement, and the California court said, no, at the time that he pled guilty, he had a right to expungement. Future changes in law can't take away an implied part of the bargain that he entered into. Your Honor, we've submitted that Arada is the State law case that is most analogous to it because it deals with the consequences of past conduct, not a new offense. And again, I challenge the State to cite to the Court a case in which a – they have said that a change in law can affect past conduct as opposed to a change in the law can affect the consequences of your future conduct and make it different than it was at the time that you entered into a plea bargain. I'm down to my last 10 seconds, Your Honor, and I thank you very much. Roberts. Thank you very much, Mr. Rubin. Mr. Roof. Can you bring your reply brief to the podium when you come? I'll tell you why I asked that, because I asked the other side if they cited City of Torrance and Swenson in the district court. They say they did. It's prominent in their brief on page 28. Under your table of authorities, you show no City of Torrance. You show Swenson v. Fyle on pages 12, 13. I can't find any reference to Swenson on pages 12 or 13. I might not be reading it right. But, you know, if – if Swenson is correctly quoted in here, the parties to a contract are presumed to have had existing law in mind when they executed their agreement. To hold that subsequent changes in the law which impose greater burdens or responsibilities upon the parties to become a part of that agreement would result in modifying it without their consent and would promote uncertainty in commercial transactions. I know it says commercial transactions, but we're dealing with a contract here. What's the problem – how do you get around City of Torrance, which says basically the same thing, and Swenson v. Fyle? We did discuss Swenson. I don't remember if it was in the appellee's brief or reply brief, but I'm positive that we discussed it. Where? I can't find it in your reply brief. You say on pages 12 and 13 that I've looked. Maybe I have a different page 12 and 13, but there's no reference to Swenson on there, in there. Well, in the interest of time, I can just tell you what our – what our response is. And what's your answer to Swenson v. Torrance? That is a 40-year-old commercial contract case. No, but the Constitution is 230 years old. I'm not impressed by 40 years old. It's a California Supreme Court case. But it's a general – Brown v. Board of Education is – I mean – It is a – it's a general commercial contract case. So what? This is a contract case. But what we have are more specific contract cases that talk about contracts in the – in the terms of plea bargains. And the case – the California case on that point is People v. Gibson. And Gibson says that for purposes of the public good, the legislature is entitled to enact retroactive laws that do change the terms of the contract. Abrogating – abrogating contracts. Yes. That's what People v. Gibson says. And that was adopted in Davis, the Ninth Circuit's – Would you read that language from Gibson so I can get it without paraphrases? I will. It says, "...contracts, including plea bargains, are deemed to incorporate and contemplate not only the existing law, but the reserve power of the State to amend the law or enact additional laws." That's the exact quote from Gibson. This Court incorporated in Davis and said, "...our holding today in Davis respects this principle of California law." So that is the contract principle in the context of plea bargains that is the most directly relevant here. Now, Mr. Ridden challenged you to name a case. I'm happy he did. I have four cases. Okay. Which were discussed in my brief and which were discussed in the district court as well. So I'm somewhat astonished that he thinks that there are no other cases. Don't be astonished. I mean, this is a courtroom. First, I don't think that the three strikes cases are distinguishable. Well, no. But yes, they are. He distinguished them. Besides the three – don't waste our time on the three strikes. Will you understand? Aside from that, there are several cases that talk about – No. You said there were four cases. Yes. Well, the first – the first of those, there's a Federal case and a State case. In re lo and Siler v. Brown. The State of California. They're both in our brief. Well, they address the exact same issue. And that's who gets to decide a parole determination. And those are cases where at the time the defendant pled guilty, the board of prison terms was entitled to determine whether that person got parole. Subsequent to their plea, that was changed to be the governor got to decide who determined whether the defendant got parole. And the defendants then said, well, that's a violation of my plea bargain. Now, this has nothing to do with future conduct or past conduct, as Mr. Reardon is trying to distinguish the three strikes cases. Nothing changed as far as the defendant's conduct went. He simply pled guilty and he thought at the time and relied on the time the board of prison terms will decide if I get paroled. That changed to be the governor who has applied a much stricter viewpoint to who gets parole. Right. But that's obviously a case where the legislature can change the mechanism of government. It's not adding a new consequence. Well, it certainly was to the defendant. Well, as it turned out. But you can't imagine a contract that would freeze the State government. Now, you've got one where there's an extra penalty, extra consequence added to the conduct that's the subject of the bargain. I'm not sure how the Court's characterization would fit into that, but the other the next case that I have are the Acuna, the People v. Acuna, which Judge O'Scanlan mentioned. That's where, at the time the defendant pled guilty, certain cases, certain convictions could be expunged. And the defendant said, well, I relied at the time on that being able to be expunged. Later, that was deleted from the list of crimes that could be expunged. And the Court said, that doesn't matter. Even though that was in your plea bargain at the time, there was no discussion about a change in the law. You didn't expressly reserve the power to change the law. So therefore, this law does apply retroactively to you. What about Arrata, which is the case that Mr. Reardon raised? That was the similar situation, but at least in that case, they followed the same principle. They just reached a different result. They did agree that there had to be some sort of term of the plea bargain. So they didn't simply say, as the magistrate judge did here, well, that was the existing law and you relied on it. They said the reason we think there was a term of the plea bargain in this case is because it was clear at the outset to the prosecution, the court, the probation department and the doctors that this was not a State prison case. So that's what distinguishes it. At least the prosecution was involved in giving up something, and therefore, they could say that was, in fact, a term of the plea bargain. Roberts, in Ray Lowe a few minutes ago, in your reply brief on page 16. Could you return to page 16 in your reply brief? Do you know, my reply brief, page 16, is simply the conclusion page. Now, your whole brief is full of that. You have all these cases in your table of authorities. You can't find them in the reply brief. I'm almost positive that in Ray Lowe was cited by. It's not in mine, and Swenson's not on 12 or 13 either. But let me read you part of Gibson. Let me read you part of Gibson. The increased penalty in the current case had nothing to do with the previous case, except that the existence of the previous case brought defendant within the description of persons eligible. In our case, this whole thing has something to do with the previous case. It's all about the previous case. Well, but that language was talking about something different. What they were – and I'm sorry, are you quoting from Gibson? Gibson. Yes. And Davis distinguished Gibson on that ground, too. No. Davis distinguished Gibson just on the facts. What happened in Davis was they said it was an unusual case where the prosecutor did happen to give something up on the record, very unusually, but the prosecutor could have used those prior convictions as two different strikes, but gave up on the record. This will only be one conviction for all purposes. And so the Court said, well, that is a term of the plea bargain then. Nothing like this case where it's simply implied in the air from nothing more than the words PC-290 on that written plea. Thank you, counsel. The case just argued will be submitted for decision, and the Court will adjourn. Thank you.
judges: Noonan, O'scannlain, Trott